UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **STEPHEN M. MCCLELLAN,**<br>     Plaintiff,<br><br>v.<br><br>**BEYOND GRAVITY, INC. A/K/A**<br>**RUAG SPACE USA, INC.,**<br>     Defendant. | **Case No. 4:23-cv-839-CLM** |

# MEMORANDUM OPINION

Stephen M. McClellan sues his former employer Beyond Gravity, Inc., a/k/a RUAG Space USA, Inc. ("RUAG") for denying his requested religious exemption from RUAG's COVID-19 vaccination and masking policy and terminating his employment. (Doc. 1). RUAG moves to dismiss McClellan's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). (Doc. 6). For the reasons explained within, the court will **GRANT IN PART** and **DENY IN PART** RUAG's motion (doc. 6).

The court will **DISMISS WITH PREJUDICE** McClellan's claims under the First Amendment, the Religious Freedom Restoration Act of 1993 ("RFRA"), Substantive Due Process Clause, and Fourteenth Amendment (Counts 2–6). The court will **DISMISS WITHOUT PREJUDICE** McClellan's Title VII failure to accommodate claim and give McClellan until **October 9, 2024,** to re-plead his Title VII claim to correct the pleading deficiencies noted below. The court **DENIES AS PREMATURE** RUAG's motion to dismiss McClellan's state-law claims of negligence, gross, negligence, and invasion of privacy. The court will not rule on the merits of McClellan's state-law claims unless McClellan's amended complaint shows: (a) that McClellan's Title VII claim may proceed to discovery, or (b) that the court has diversity jurisdiction over this case.

### STATEMENT OF THE ALLEGED FACTS

RUAG is a federal contractor that constructs large rockets and space exploration modules for the U.S. military and NASA. (Doc. 1, ¶ 20). In 2019, RUAG hired McClellan as a project manager in its Huntsville office complex and Decatur manufacturing facility. (*Id.*, ¶¶ 62, 66).

### A. RUAG's Vaccine and Mask Mandates

In September 2021, President Biden issued Executive Order 14042, which would require federal contractors to ensure that their employees were fully vaccinated from COVID-19 by January 2022, unless an individual employee was legally entitled to an accommodation. (*Id.*, ¶ 19). But Executive Order 14042 never took effect; it was enjoined by court order and was later withdrawn by the President. (*Id.*, ¶¶ 19–20); 88 Fed. Reg. 30891.

Even so, to comply with Executive Order 14042's requirements, RUAG followed the direction and encouragement of the U.S. Space Force and NASA and created a COVID-19 Vaccination Mandate, COVID-19 Testing Policy, COVID-19 Masking Policy, and COVID-19 Social Distancing Policy. (Doc. 1, ¶ 21). RUAG rolled out its vaccine mandate on November 21, 2021, stating that it would require employees to be fully vaccinated by January 13, 2022. (Doc. 1-3). RUAG told employees that they:

> [W]ill be considered fully vaccinated for COVID-19 two weeks after they have received the requisite number of doses of a COVID-19 vaccine approved or authorized for emergency use by the U.S. Food and Drug Administration or that has been listed for emergency use by the World Health Organization. For Pfizer-BioNTech, Moderna, or AstraZeneca/Oxford that is two weeks after an employee has received the second dose in a two-dose series. For Johnson and Johnson (J&J)/Janssen, that is two weeks after an employee has received a single dose of the vaccine.

(Doc. 1, ¶ 27).

RUAG also told employees how they could seek accommodations by submitting an exemption request:

> Employees who the Company determines to be exempt from the vaccination requirement will be considered for an appropriate accommodation, if any. Reasonable accommodations may include <u>always</u> wearing N95 masks, regular weekly COVID-19 testing shown to your manager prior to starting work each week, physical distancing, remote work, reassignment to a vacant, available position for which the employee is qualified, unpaid leave, or a combination of these options. Accommodations should not be considered permanent but may be revisited periodically to ensure that the selected accommodation remains effective and necessary. The Company reserves the right to identify the appropriate accommodation for the particular employee's individual circumstances.

(*Id.*, ¶ 29).

### B. McClellan's Exemption Request

McClellan, a Christian, submitted a request for exemption:

> It is my sincerely held religious belief that my God has directed me, through his word and through his guidance in prayer, not to partake in the medical practice of vaccination and masking. I have held this sincere belief for the better part of my life. Past non-adherence to this sincere belief (primarily on the basis of fear) does not diminish or dismiss the sincerity of this belief.

(Doc. 1-5, p. 1). McClellan continued that his "reasonable accommodation request [was] to continue [his] employment with RUAG space, vaccine-free and mask-free, with no change in daily office practice," and he cited seven Bible verses that provided part of the basis for his beliefs. (*Id.*, pp. 1–2).

McClellan submitted a second religious exemption request a few weeks later, explaining his sincerely held religious beliefs in detail, and including a letter from Pastor Nick Martinez who attested to the sincerity of McClellan's religious beliefs. (Doc. 1, ¶ 33). According to McClellan, this detailed religious exemption request explained that he is a devout Christian who holds sincerely held religious beliefs against the creation and use of the mRNA COVID-19 vaccinations because they use stem cells from aborted fetal tissue. (*Id.*, ¶¶ 3, 64).

**C. McClellan's Termination**

Around 10 days after receiving McClellan's second exemption request, RUAG told McClellan that it could not "accommodate [his] request not to wear a mask at work" and that he would "not be allowed to remain in the workplace without wearing a mask." (*Id.*, ¶ 43). RUAG also told McClellan that it considered possible alternative accommodations, such as telework and reassignment, but there were no telework positions available and no positions elsewhere in the facility where McClellan could not wear a mask and perform his job duties safely. (*Id.*, ¶ 44). RUAG then fired McClellan for violating the vaccine mandate mask policy. (*Id.*, ¶ 45). Seven days later, RUAG abandoned its COVID-19 vaccine mandate. (*Id.*, ¶ 51).

## STANDARD OF REVIEW

In reviewing a Rule 12 motion, this court accepts the allegations in McClellan's complaint as true and construes them in the light most favorable to McClellan. *See Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012). The ultimate question is whether McClellan's allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). If the facts as pleaded could entitle McClellan to relief, the court must deny RUAG's motion to dismiss. If, however, the court accepts McClellan's pleaded facts as true, and McClellan still would not be entitled to relief, the court must grant the motion.

## DISCUSSION

McClellan pleads eight counts: (1) Title VII failure to accommodate, (2) violation of the First Amendment Free Exercise Clause, (3) violation of RFRA, (4) deprivation of the fundamental right to privacy (§ 1983), (5) deprivation of Fourteenth Amendment Due Process Clause rights (§ 1983), (6) deprivation of First Amendment Freedom of Religion rights (§ 1983), (7) state-law negligence or gross negligence, and (8) state-law invasion of privacy. RUAG says the court should dismiss McClellan's complaint with prejudice for several reasons. The court starts with the argument that applies to all eight counts.

### A. Shotgun Pleading (all counts)

Complaints that violate the requirements of *Federal Rules of Civil Procedure* 8 and 10 are impermissible 'shotgun pleadings'. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). This court "has the inherent authority to control its docket and ensure the prompt resolution of lawsuits, which includes the ability to dismiss a complaint on shotgun pleading grounds." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quotations omitted). But a dismissal on shotgun pleading grounds is appropriate only "where it is *virtually impossible* to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792. F.3d at 1325 (quotations omitted).

RUAG says that McClellan's complaint is a shotgun pleading because the first paragraph in each count incorporates all 84 paragraphs of factual allegations. *See Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018) (finding a complaint a shotgun pleading when it incorporated by reference all factual allegations "into each claim, making it nearly impossible for Defendants and the court to determine with any certainty which factual allegations give rise to which claims for relief").

The court disagrees for two reasons. First, merely re-alleging a complaint's factual allegations at the beginning of each count doesn't make a complaint a shotgun pleading. *See Weiland*, 792 F.3d at 1324. Instead, a complaint is a shotgun pleading when it incorporates *both* the complaint's factual allegations *and* the allegations in each preceding count so that the allegations in each count are "rolled into every successive count on down the line." *See id.*

Second, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increase[ ] the burden of understanding the factual allegations underlying each count." *Id.* A reasonable reader can tell that a common set of facts underlies all eight of McClellan's claims. Plus, RUAG managed to articulate arguments on the merits for each count, so RUAG understands the claims and the factual allegations that support them.

In short, McClellan's complaint doesn't make it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *Weiland*, 792. F.3d at 1325 (quotations and emphasis omitted). So the court will not dismiss the complaint on shotgun pleading grounds.

### B.   State Action (Counts 2-6)

Counts 2 through 6 each require McClellan to show that a state actor/government entity violated one of his constitutional or statutory rights. RUAG is a private contractor, not a government entity, so it argues that McClellan cannot bring these claims against it.

A private actor can be considered a state entity in one of three ways. *See Charles v. Johnson*, 18 F.4th 686, 694 (11th Cir. 2021). First, the 'state compulsion test' asks whether "the State has coerced or at least significantly encouraged the action alleged to violate the Constitution." *Id.* Second, the 'public function test' asks whether "the private parties performed a public function that was traditionally the exclusive prerogative of the State." *Id.* Finally, the 'nexus/joint action test' asks whether "the State has so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise." *Id.*

1. <u>State compulsion test</u>: McClellan says these allegations from his complaint establish that the Government coerced or significantly encouraged RUAG's decision to violate McClellan's rights:

> - "[T]his lawsuit is grounded upon Defendant's creation, implementation, administration, and enforcement actions concerning its [COVID-19 Policies] and conduct related thereto, ***which was undertaken at the direction and encouragement of the Government***." (Doc. 1, ¶ 3 (emphasis added)).
>
> - "On September 9, 2021, President Joseph R. Biden signed Executive Order 14042 ("EO 14042"), which required all 'covered contractors' be vaccinated by January 13, 2022, which was then extended to January 18, 2022, unless an individual employee was legally entitled to accommodation.

6

> EO 14042 is previously subject to a nationwide federal injunction and is not being enforced by the Office of Management and Budget ("OMB"). (*Id.*, ¶ 19).
>
> - "Defendant is a federal contractor that has contracts or contract-like instruments with U.S. and state governments. . . . Defendant is required to follow EO 14042 if the executive order ever went into effect; however, EO 14042 has never went into effect at any time since its initial announcement in September 2021 and was held to be unconstitutional by a myriad of Federal District and Circuit Courts, including the Eleventh Circuit." (*Id.*, ¶ 20).
>
> - "Defendant's efforts to comply with EO 14042 were entirely predicated on the Government's instruction and guidance concerning full vaccination." (*Id.*, ¶ 23).

McClellan is not the first employee to sue his federal contractor employer over COVID mandates and raise these arguments for government compulsion. Courts have generally held that similar policies implemented by federal contractors in response to EO 14042 do not satisfy the state compulsion test. For example, in an opinion by Chief Judge Sutton, the Sixth Circuit held that employees suing Smucker's for denying their requested religious accommodations couldn't establish state action under the state compulsion test. *See Ciraci v. J.M. Smucker Co.*, 62 F.4th 278, 284 (6th Cir. 2023). The circuit court found that the plaintiffs' claims failed the state compulsion test for two reasons. *See id.* at 283–84. First, the executive order didn't tell Smucker's to deny the plaintiffs' requests for religious exemptions; instead, the order "told Smucker's to *grant* religious exemptions to those legally entitled to them, and let Smucker's decide on its own who qualified." *Id.* at 283. Second, the plaintiffs "pleaded *nothing* specifically that shows the federal policy 'dictated' their employer's decision to deny their exemptions." *Id.* at 284.

District courts within the Eleventh Circuit have reached the same conclusion. For example, in *Franklin v. Austal USA, LLC*, 2024 WL 973973 (S.D. Ala. Feb. 26, 2024), the court rejected claims identical to McClellan's brought against the plaintiff's former employer, a federal contractor that builds

7

ships for the United States Navy. The court reasoned that "[a] private entity like Austal does not become a state actor by complying [with] . . . an executive order" and rejected the argument that an entity's acceptance of COVID-19 relief funds could transform it into a state actor. *Id.*, at \*6. And though the Eleventh Circuit hasn't yet addressed this precise issue, it has affirmed a district court's finding in a COVID-19 employment case "that a general fear of government fines" doesn't equal state compulsion. *Leitgeb v. Sark Wire Co. – GA*, 2022 WL 18777380, at \*5 (N.D. Ga. Sept. 21, 2022), *aff'd,* 2023 WL 5607882 (11th Cir. Aug. 30, 2023).

This court agrees. While the President may have issued EO 14042, the federal Government did not coerce or significantly encourage RUAG to deny McClellan's exemption request and fire him. As McClellan acknowledges, EO 14042's requirements didn't apply to those "legally entitled to accommodation[s]" (Doc. 1, ¶ 19). And as the Sixth Circuit explained, the executive order left it to the complete discretion of a federal contractor "to decide which of its employees merited religious exemptions. When [RUAG] exercised that discretion, the government did not coerce it." *Ciraci*, 62 F.4th at 283–84. Plus, though RUAG would be subject to the executive order, nothing in McClellan's complaint plausibly suggests that the executive order required RUAG to deny the specific accommodations that McClellan requested. *See Blum v. Yaretsy*, 457 U.S. 991, 1009–10 (1982) (finding no state action when regulations required nursing homes "to discharge or transfer patients whose continued stay is inappropriate" but did "not dictate the decision to discharge or transfer in a particular case"). The court thus finds that McClellan hasn't shown that the President's actions "coerced or at least significantly encouraged" RUAG to deny McClellan's request for a religious exemption from its COVID-19 policies. *See Charles*, 18 F.4th at 694.

2. Public function test: Nor has McClellan shown that his claims satisfy the public function test, which requires RUAG to have "performed a public function that was traditionally the exclusive prerogative of the State." *See id.* Again quoting Chief Judge Sutton: "A vaccine mandate does not count as a public function traditionally handled just by the State[;] [i]t is hardly unheard of for private companies to make vaccination a condition of employment." *Ciraci,* 62 F.4th at 282. (quotations and citations omitted).

Recognizing this, McClellan argues that his allegations related to RUAG's role in preserving national security show that RUAG was performing a public function when it denied his requested religious exemption. (*See* Doc. 1 ¶ 23 (RUAG "was acting in the capacity to continually serve the national security interests of the Government in protecting its citizens from COVID-19, providing for the common defense, deterring domestic and foreign threats, safeguarding and producing satellites and rocket technologies for U.S. intelligence operations, and ensure freedom and protection of American citizens is achieved.")). But "very few" functions satisfy the public function test, and the test isn't satisfied just because the defendant is a defense contractor. *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809, 814–15 (2019).

Because RUAG's "business primarily revolves around the construction of large rockets and space exploration modules," (Doc. 1, ¶ 20), that is the public function that McClellan must show has been traditionally handled exclusively by the State. The court agrees with the Southern District that "[h]istorically, private corporations and other entities have performed activities that serve the national interests of the government, as is the case here. But the fact that a private entity performs a function which serves the public does not transform those acts into governmental action." *Franklin*, 2024 WL 973973, at *5. And the building of large rockets and space exploration modules isn't a function that has traditionally been performed by just the State. Instead, the Government has traditionally contracted with private companies to build these rockets and space exploration modules for it just as it has traditionally contracted with private parties to build naval vessels or other military equipment. *See id.* As a result, the court finds that McClellan cannot establish that RUAG is a state actor under the public function test.

3. <u>Nexus/joint action test</u>: The final test asks whether "the State has so far insinuated itself into a position of interdependence with" RUAG "that it was a joint participant in the enterprise." *Charles*, 18 F.4th at 694. This test can be met by showing conspiracy, state-prompted partnership, or private individual-prompted use of state authority. *See id.* at 697.

No federal official partnered with, conspired with, or helped RUAG deny McClellan's request for a religious exemption, then fire him. And RUAG's

9

status as a federal contractor subject to federal regulations doesn't transform it into a public actor entwined with the State. *See Ciraci*, 62 F.4th at 283; *Franklin*, 2024 WL 973973, at *6. Plus, EO 14042 gave RUAG discretion over which religious exemptions to grant, so RUAG denied McClellan's requested exemption under its own authority not the federal government's authority. Thus, the court finds that McClellan's claims don't satisfy the nexus/joint action test.

—

Because RUAG was not a state actor when it denied McClellan's exemption request, the court will dismiss Counts 2 through 6.

Ordinarily, the court would give McClellan a second chance to plead state action. But this court "may properly deny leave to amend the complaint when such amendment would be futile." *Taveras v. Bank of Am., N.A.*, 89 F.4th 1279, 1288 (11th Cir. 2024) (cleaned up). The court finds that there is no set of facts that McClellan could plead that would show that RUAG was acting as a state actor when it denied McClellan's request for a religious exemption. EO 14042 told federal contractors to grant legally valid requests for religious accommodations. And neither RUAG's vaccine mandate nor its business of constructing rockets is a traditional public function. Plus, there was no conspiracy or state-prompted partnership between RUAG and the federal government, and RUAG denied McClellan's exemption request under its own authority, not the authority of the State. The court will thus dismiss Counts 2 through 6 with prejudice.

### C.   Title VII, Failure to Accommodate (Count 1)

In Count 1, McClellan pleads that RUAG violated Title VII by failing to accommodate his sincere religious beliefs that preclude him from receiving an mRNA COVID-19 vaccine. (Doc. 1, ¶¶ 85–93). RUAG makes two arguments against this claim. First, RUAG argues that the exemption request attached to McClellan's complaint differs from the religious belief described in McClellan's complaint and what the exemption request says controls. Second, RUAG asserts that McClellan has not adequately alleged that he has a sincerely held religious belief that RUAG failed to accommodate.

1. <u>Contradictory exhibits</u>: McClellan's first exemption request states that McClellan sincerely believed "that my God has directed me, through his word and through his guidance in prayer, not to partake in the medical practices of vaccination and masking." (Doc. 1-5, p. 1). It does not specifically mention McClellan's opposition to mRNA vaccines because of the use of stem cells from aborted fetal tissue, the religious belief that McClellan's complaint alleges RUAG failed to accommodate. (Doc. 1, ¶¶ 3, 42, 61, 64, 87). So RUAG asserts that McClellan's allegations must be limited to the religious beliefs stated in the first exemption request, which did not include opinions about mRNA and aborted fetal tissue.

"A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016). So to the extent that McClellan's allegations contradict the first exemption request, the court finds that the sincerely held belief raised in McClellan's first exemption request was that God had directed him "not to partake in the medical practices of vaccination and masking." (Doc. 1-5, p. 1). McClellan did not explain that he opposed mRNA vaccines because of the use of stem cells from aborted fetal tissue.

That said, McClellan alleges that his second exemption request was more detailed and included a letter from his pastor explaining McClellan's beliefs. (Doc. 1, ¶ 33). McClellan also says that he notified RUAG of his "religious beliefs against the creation and use of mRNA COVID-19 vaccination due to aborted stem cells . . . when he submitted his detailed religious exemption." (*Id.*, ¶ 64). McClellan did not attach his second religious exemption request as an exhibit to the complaint. So at this stage, the court will accept as true McClellan's allegations that he informed RUAG of his beliefs against the creation and use of mRNA vaccines in his second exemption request. *See Lanfear*, 679 F.3d at 1275.

2. <u>Sufficient pleading</u>: A plaintiff establishes a prima facie case of religious discrimination under Title VII "by showing that (1) his sincere and bona fide religious belief conflicted with an employment requirement, and (2) his employer took adverse employment action against him because of his inability to comply with the employment requirement or because of the employer's perceived need for his reasonable accommodation." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021).

RUAG says that McClellan hasn't adequately alleged that he holds a bona fide religious belief that conflicts with RUAG's employment requirements. A bona fide religious belief is one that is sincerely held. *See Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 855 (11th Cir. 2010). To plausibly allege that he has a sincerely held religious belief, McClellan had to allege "enough factual matter (taken as true) to suggest that his religious belief was sincerely held, putting forward plausible grounds to infer that it was sincerely held, and identifying facts that are suggestive enough to render the sincerity of his belief plausible." *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (cleaned up). McClellan's allegations related to his opposition to mRNA vaccines meets this standard—*i.e.*, the court accepts McClellan sincerely believes that it is wrong to receive an MRNA vaccine.

But McClellan doesn't plausibly allege in Count 1 (or elsewhere) that his religious objection to receiving an mRNA vaccine conflicted with RUAG's vaccine mandate. As RUAG points out, McClellan could have satisfied RUAG's vaccine mandate by receiving the AstraZeneca or Johnson & Johnson vaccine, neither of which used mRNA. (Doc. 1, ¶ 27). Plus, McClellan did not ask permission to take the shot from AstraZenca or J&J rather than Moderna or Pfizer. (*Id.*, ¶¶ 43–44).

As for masks, McClellan does not mention the word 'mask' in Count 1. (Doc. 1, ¶¶ 85-93). His entire Title VII claim is based on his religious belief that he should not receive an mRNA COVID-19 vaccine. So McClellan doesn't plead facts that would explain why his religious beliefs prevented him from adhering to the mask requirement.


The court will thus grant RUAG's motion to dismiss Count 1 for failing to adequately allege that RUAG acted against McClellan based on McClellan's sincerely held religious belief. Unlike Counts 2-6, this dismissal will be without prejudice because McClellan might be able to adequately plead facts that link his sincerely held religious belief(s) to RUAG's adverse employment action. So the court will allow McClellan to replead his Title VII claim in an amended complaint.

### D.     State-law Claims (Counts 7 and 8)

That leaves McClellan with only his state-law claims of negligence or gross negligence (Count 7), and invasion of privacy (Count 8). The complaint says that this court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367. (*Id.*, ¶ 12). And McClellan does not assert or allege facts that would allow the court to find that it has original jurisdiction over McClellan's state-law claims because the parties are completely diverse.

This court has discretion over whether to exercise supplemental jurisdiction over pendant state-law claims. *See Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89. (11th Cir. 2004). And the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial." *Id.* at 1089. McClellan has yet to show that he can plead a viable federal claim against RUAG, and his state-law claims raise the novel and complex issue of when an employer can be liable to its employee for implementation of COVID-19 policies. Unless McClellan can plead a viable claim that vests this court with federal question jurisdiction, the court finds that these state law issues are best left for the state courts to decide. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966).

The court will thus deny as premature RUAG's motion to dismiss McClellan's state-law claims on the merits. The court will not rule on the merits of McClellan's state-law claims unless McClellan's amended complaint shows: (a) McClellan has a federal law claim that entitles him to discovery, or (b) the court has diversity jurisdiction. If McClellan chooses to file an amended complaint, he has leave to amend his state-law claims to correct any pleading deficiencies that he believes RUAG has identified.

13

## CONCLUSION

For the reasons explained within, the court will **GRANT IN PART** and **DENY IN PART** RUAG's motion to dismiss (doc. 6):

- The court **DISMISSES WITHOUT PREJUDICE** Count 1.
- The court **DISMISSES WITH PREJUDICE** Counts 2, 3, 4, 5, and 6.
- The court **DENIES AS PREMATURE** RUAG's motion to dismiss Counts 7 and 8.

McClellan may file an amended complaint by **October 9, 2024**. If McClellan does not file an amended complaint by that date, the court will dismiss his Title VII claim (Count 1) with prejudice and will dismiss without prejudice McClellan's state-law claims (Counts 7 and 8) so McClellan can refile them in state court.

The court will enter a separate order that carries out this ruling.

**Done** on September 16, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE