# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **STEPHEN MCCLELLAN,**<br>    Plaintiff,<br><br>v.<br><br>**BEYOND GRAVITY, INC.,**<br>    Defendant. | Case No. 4:23-cv-839-CLM |

## MEMORANDUM OPINION

The court granted in part and denied in part RUAG's motion to dismiss McClellan's original complaint. (Doc. 14). The court gave McClellan one chance to amend his complaint to fix highlighted pleading deficiencies. McClellan filed his amended complaint, and RUAG once again asks the court to dismiss. (Doc. 24); (doc. 25). For the reasons explained below, the court **GRANTS IN PART AND DENIES IN PART** RUAG's motion. This case will proceed to discovery on Count I (Title VII, religious discrimination) and Count III (intrusion into seclusion).

## BACKGROUND

McClellan started working for RUAG (a/k/a Beyond Gravity, Inc.) in 2019. COVID-19 hit the next year, and RUAG implemented workplace rules to combat COVID's effects.

### 1.  COVID-19 Protocols

RUAG is a government contractor and peer of U.S. Space Force and NASA. RUAG followed industry standards to create COVID-19 protocols. For instance, RUAG enacted a Masking Policy that required employees to wear facial coverings at work. RUAG also required employees to be fully immunized against COVID-19 (the "Vaccine Mandate") but didn't require employees obtain a vaccine from a certain manufacturer.

**2.    Religious Exemption Requests**

RUAG employees could apply for religious exemptions and accommodations under the COVID-19 policies. This lawsuit arose after RUAG denied both of McClellan's religious exemption requests from the Vaccine Mandate and Masking Policy. McClellan filed his first exemption on November 4, 2021. In it, he said:

> I'm writing this request for religious exemption to, and reasonable accommodation from, all provisions of presidential Executive Order 14042; which includes the requirements for mandatory COVID-19 vaccination and masking . . . It is my sincerely held religious belief that my God has directed me, through his word and through his guidance in prayer, not to partake in the medical practices of vaccination and masking.

While not explained in his 2021 exemption request, McClellan pleads in his amended complaint that he objected to all forms of the COVID vaccine because each was the product of research on aborted fetal tissue.

The next day, RUAG HR sent McClellan the following email with the subject line "Your Religious Exemption Not to Wear a Mask,"

> We believe that allowing you the accommodation of not wearing a mask would create an undue hardship by impairing workplace safety. We have considered possible alternative accommodations, including telework and reassignment . . . We are unable to accommodate your request not to wear a mask in the plant.

Thirteen days later, McClellan resubmitted the same exemption with a letter from his pastor explaining McClellan's objections. Less than two weeks later, RUAG fired McClellan, citing its inability to accommodate McClellan's mask exemption request and its upcoming vaccination policy.

3.   **Lawsuit**

McClellan sued RUAG for a swath of federal and state-law alleged violations. The court dismissed all claims with prejudice except for McClellan's Title VII claim and two state-law claims. (Doc. 14). The court dismissed McClellan's Title VII's claim without prejudice and gave him a chance to replead to establish federal jurisdiction. (*Id.*).

## STANDARD

Because this is a Rule 12 motion, the court accepts the allegations in McClellan's complaint as true and construes them in the light most favorable to McClellan. *Lanfear v. Home Depot, Inc.*, 697 F.3d 1267, 1275 (11th Cir. 2012). The ultimate question is whether all of McClellan's allegations, when accepted as true, "plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). If the facts as pleaded could entitle McClellan to relief, then the court must deny Defendant's motion to dismiss. If, however, the court accepts all of McClellan's pleaded facts as true, and McClellan still would not be entitled to relief, then the court must grant the motion.

## ANALYSIS

The court must first determine whether McClellan plausibly alleges a Title VII violation and thus gives this court federal question jurisdiction. If he does, the court must then determine whether McClellan plausibly alleges his state-law claims.

### Count I: Title VII (religious discrimination)

To establish religious discrimination under Title VII, McClellan must plausibly allege "that (1) his sincere and bona fide religious belief conflicted with an employment requirement, and (2) his employer took adverse employment action against him because of his inability to comply with the employment requirement or because of the employer's perceived need for his reasonable accommodation." *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021).

In its previous opinion, the court dismissed McClellan's Title VII claim for two reasons: (1) McClellan limited his vaccine objections to mRNA vaccines, and RUAG's policy allowed McClellan to take other forms of the vaccine, and (2) McClellan did not mention masks in Count 1, so RUAG's mask policy could not be the basis for a viable claim. (Doc. 13, pp. 12-13). McClellan has re-pleaded Count 1 to address both deficiencies, and as explained below, his amended Count 1 is sufficient to survive Rule 12.

  *a. Vaccine Mandate*

As mentioned, in his original complaint, McClellan pleaded that he "holds sincere religious beliefs that preclude him from receiving the mRNA COVID-19 vaccine." (Doc. 1, ¶ 87). In his amended complaint, McClellan expands his religious objection to all COVID vaccines:

> The named Plaintiff holds sincere religious beliefs that preclude him from receiving the mRNA COVID-19 vaccine or alternative COVID-19 vaccines due to the use of aborted fetal cell tissue in the research and creation of said vaccines.

(Doc. 24, ¶ 91). This across-the-board objection to vaccination reflects the language in McClellan's exemption request:

> **Basis of Religious Exemption**
> It is my sincerely held religious belief that my God has directed me, through his word and through his guidance in prayer, not to partake in the medical practices of vaccination and masking. I have held this sincere belief for the better part of my life. Past non-adherence to this sincere belief (primarily on the basis of fear) does not diminish or dismiss the sincerity of this belief. Though attestation and evidence of religious justification for said sincerity need not be provided I still wish to share a sample of basis of my beliefs:

And if you read RUAG's termination letter in the light most favorable to McClellan, RUAG understood McClellan's exemption request to seek an exemption from all permitted COVID vaccines, not just mRNA vaccines:

> Dear Matt,
>
> After carefully reviewing your request for a religious exemption from both the RUAG Space Mandatory Vaccination Policy requirement and the requirement to wear a mask in the workplace, we are denying your request for exemption.

RUAG complains that McClellan changed his tune during the pleading stage—*i.e.*, he went from objecting to mRNA vaccines to all vaccines. But that complaint is properly left to discovery, not Rule 12 motions. Reading the operative complaint in a light most favorable to McClellan, McClellan pleads the same religious objection that he put in his exemption request, and that's what counts. Rule 12 is not the vehicle to challenge the scope or sincerity of McClellan's religious belief.

RUAG's argument that Rule 12 dismissal is also warranted because its vaccine policy did not cause McClellan's termination (masking did) is also best left to discovery and Rule 56 motions or trial. McClellan pleads that RUAG failed to accommodate his request not to vaccinate and that his request not to vaccinate altered the conditions of his employment. (Doc. 24, ¶¶ 94-96). And RUAG's termination letter, when read in a light most favorable to McClellan, can be interpreted to say that RUAG was firing—or as RUAG put it, "accept[ing] your voluntary resignation"—because McClellan told RUAG that he would not accept a vaccine:

> We also considered other options and unfortunately we have no work from home positions that are vacant and that you are qualified for, and we have no positions in any other facility that would not similarly require you to wear a mask if unvaccinated.
>
> Therefore, since you gave us advanced notice prior to the December 2nd effective date of the mandatory vaccination policy, we accept your voluntary resignation effective today. Your last day of work will be today, November 29, and your last day of pay will be Wednesday, December 1, 2021, which will also then provide company paid medical benefit coverage for you through the end of December 2021.

In short, McClellan has pleaded enough facts that, if proved true, could establish that RUAG fired McClellan because of his sincere religious belief against receiving a COVID vaccination.

5

### b. Mask Policy

The court reaches the same conclusion about masks. In his amended complaint, McClellan added the following paragraph to Count I:

> The named Plaintiff holds sincere religious beliefs that preclude him from covering his face with a mask due to his belief that it dishonors God to cover his face.

(Doc. 24, p. 24). As already shown, McClellan's exemption request mentioned masking:

> **Basis of Religious Exemption**
> It is my sincerely held religious belief that my God has directed me, through his word and through his guidance in prayer, not to partake in the medical practices of vaccination and masking. I have held this sincere belief for the better part of my life. Past non-adherence to this sincere belief (primarily on the basis of fear) does not diminish or dismiss the sincerity of this belief. Though attestation and evidence of religious justification for said sincerity need not be provided I still wish to share a sample of basis of my beliefs:

And RUAG's emails and termination letter, when read in a light most favorable to McClellan, are evidence that RUAG acted against McClellan because he sought a mask-free accommodation:

> We are unable to accommodate your request not to wear a mask in the plant. As you know, we take seriously our protection of our workforce and will continue to do so as long as COVID-19 remains a threat.

—

> We cannot accommodate your request not to wear a mask at work. Because employees in our facility work closely together, the risk of transmission of COVID-19 among employees is a serious and realistic threat. Masking is a proven way to significantly reduce that threat. You will not be allowed to remain in the workplace without wearing a mask.
>
> We also considered other options and unfortunately we have no work from home positions that are vacant and that you are qualified for, and we have no positions in any other facility that would not similarly require you to wear a mask if unvaccinated.

In short, McClellan plausibly alleges that his sincere religious belief against facial coverings rendered him unable to comply with RUAG's Mask Policy. McClellan also plausibly alleges that RUAG fired him because it couldn't accommodate his request to work without a mask.

—

For these reasons, the court **DENIES** RUAG's motion to dismiss Count 1 in all respects. McClellan may proceed to discovery on both a vaccine and mask theory.

Because the court finds that McClellan pleads a viable federal claim in Count I, it has supplemental jurisdiction over the state-law claims McClellan pleads in Counts II and III. The court reviews them below.

**Count II: Negligence / Gross Negligence**

RUAG asks the court to dismiss Count II, and in response, McClellan "concede[s] that the negligence and gross negligence claims should be dismissed." (Doc. 29, p. 31). The court therefore **GRANTS** RUAG's motion to dismiss Count II.

**Count III: Invasion of Privacy**

Alabama recognizes the tort of invasion of privacy and has adopted the Restatement (Second) of Torts articulation. *See Phillips v. Smalley Maint. Services Inc.*, 435 So. 2d 705 (Ala 1983). "It is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use." *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997). McClellan pleads the first two theories. The court reviews them separately below.

### A. Intrusion into seclusion

A defendant invades the plaintiff's privacy by "wrongful intrusion" when he "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns," and he is liable for that intrusion if the intrusion "would be highly offensive to a reasonable person." *Id.* at 702 (quoting Restatement (Second) of Torts §

652B (1977)). Wrongful intrusion can include "investigation into the plaintiff's private concerns, such as opening private mail or examining a private bank account." *Id.* "There must be something in the nature of prying or intrusion and the intrusion must be something which would be offensive or objectionable to a reasonable person. The thing into which there is intrusion or prying must be, and be entitled to be, private." *Hogin v. Cottingham*, 533 So. 2d 525, 531 (Ala. 1988) (internal citations omitted).

According to McClellan,

> [f]rom September 2021 until termination, Plaintiff believes Defendant was monitoring his private technological data or communications to identify who remained unvaccinated so Defendant could bring him into compliance with Defendant's COVID-19 Vaccination Mandate through punitive actions. Plaintiff believed Defendant's managers eavesdropped on his conversations, surveilled him for weeks, and accessed and/or monitored his private health information.

(Doc. 24, p. 22). Accepting McClellan's facts as true, the court finds McClellan plausibly pleaded wrongful intrusion. Eavesdropping and surveilling are actions generally associated with wrongful intrusion. *See Fuller*, 706 So. 2d at 702 (finding no wrongful intrusion because "Johnston did not allege that the defendants entered his home, searched through his private papers, wiretapped his telephone, or eavesdropped on his conversations. Johnston did not allege that the defendants obtained private records concerning his affairs. Johnston failed to present any evidence that Fuller's conduct in gathering the information was abrupt, offensive, and objectionable."). And McClellan pleaded that his vaccination status was private—*i.e.*, McClellan did not freely share that information with coworkers or the public. (Doc. 24, p. 22); *Fuller*, 706 So. 2d at 702 (quoting *Nadar v. Gen. Motors Corp.*, 25 N.Y.2d 560, 568–69 (1970)) ("Information about the plaintiff which was already known to others could hardly be regarded as private to the plaintiff. Presumably,

the plaintiff had previously revealed the information to such other persons, and he would necessarily assume the risk that a friend or acquaintance in whom he had confided might breach the confidence."). A reasonable person could deem it highly offensive to surveil an employee to access his private medical information without his consent.

As a result, the court **DENIES** RUAG's motion to dismiss Count III on McClellan's wrongful intrusion theory.

### B. Publicity of private information

McClellan also claims that RUAG invaded his privacy by giving publicity to his medical information, specifically his vaccination status. (Doc. 24, p. 25–26). This theory of invasion of privacy occurs when a tortfeasor "gives publicity to a matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Restatement (Second) of Torts* § 652(D).

Publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge. The difference [between publicity and publication] is not one of the means of communication, which may be oral, written or by any other means. It is one of a communication that reaches or is sure to reach, the public." *Id., cmt. a*; *Fuller*, 706 So. 2d at 703.

McClellan fails to plausibly allege that RUAG gave publicity to his medical information. Though not specifically alleged in Count III, McClellan's publicity claim appears to be based on RUAG:

> managers fail[ing] to safeguard Plaintiff's and others' confidential medical information because Defendant's managers had compiled a comprehensive report of who was unvaccinated and vaccinated and freely disseminate[d] this information.
> 
> . . .

> Throughout Fall 2021 until Plaintiffs' termination, Defendant's vaccinated workforce was collecting confidential medical information of their employees, disseminating the obtained information to multiple other employees without Plaintiffs' consent or knowledge, and for those unvaccinated employees who were identified as dissenters.

(Doc. 24, p. 21–22). Though McClellan does allege that RUAG disseminated his private medical information, he fails to explain who specifically RUAG shared his information with or the number of people that RUAG made aware of his information. (*Id.*). McClellan also never claims RUAG announced his information to the public at large. (*Id.*); *Fuller*, 706 So. 2d at 703 ("Martin did not broadcast over the radio the information obtained about Johnston, he did not print it in a newspaper, and he did not tell it to a large number of people.").

Even if RUAG informed "multiple other employees" of McClellan's unvaccinated status, that audience wouldn't be large enough to meet the state-law definition of "publicity." So McClellan fails to allege that RUAG gave publicity to his unvaccinated status.

—

To sum up, McClellan can proceed with Count III only on the theory that RUAG wrongfully intruded into his private affairs / information. McClellan cannot proceed on a publicity theory.

## CONCLUSION

The court **GRANTS IN PART AND DENIES IN PART** RUAG's motion to dismiss. McClellan may proceed to discovery on his Title VII claim and his wrongful intrusion theory of invasion of privacy. All other claims are **DISMISSED WITH PREJUDICE.**

**DONE** and **ORDERED** on September 9, 2025.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE